Filed 4/21/26  In re O.M. CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re O.M., a Person Coming Under the Juvenile Court Law. | B345321 |
| | (Los Angeles County Super. Ct. No. 23CCJP00965A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.M. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant Z.R.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

In this dependency appeal, father M.M. (Father) and mother Z.R. (Mother) each appeal from the juvenile court's termination of their parental rights as to their son O.M. (born March 2023) under Welfare and Institutions Code section 366.26.[1] The parents' sole argument on appeal is that the Los Angeles County Department of Children and Family Services (Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law by failing to inquire of a maternal aunt, a maternal uncle, and a paternal aunt whether O.M. might be an Indian child. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Petition, Proceedings, ICWA Inquiry, and Termination of Parental Rights*

In March 2023, the Department filed a section 300 petition on behalf of newborn O.M., after he tested positive for fentanyl

_____

[1]   Statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

and methadone at birth.  The petition alleged substance abuse by the parents, including methamphetamine use by Mother during her pregnancy, and failure to protect by Father.  (§ 300, subd. (b)(1).)

O.M. had been removed shortly after birth pursuant to a protective custody order and was detained from his parents with monitored visits after the petition was filed.  Both parents denied Indian ancestry in court, and each filed an ICWA-020 form denying any known Indian ancestry.  The juvenile court found no reason to know or believe O.M. was an Indian child.  Both parents denied Indian ancestry throughout the subsequent proceedings.

On April 11, 2023 and May 22, 2024, paternal grandmother Robyn M. denied Indian ancestry.  On April 11, 2023, May 22, 2024, and December 19, 2024, maternal grandmother Mary R. denied Indian ancestry.

At the jurisdiction and disposition hearing on May 1, 2023, the juvenile court sustained the petition, declared O.M. a dependent of the court, and removed him from both parents with reunification services.  Father's counsel asked that "paternal aunt, Jennifer [J.]" be assessed as a visitation monitor, and the court ordered the Department to assess Jennifer J. as a potential visitation monitor.[2]  The record does not otherwise contain a reference to a paternal relative named Jennifer, and Father subsequently reported he has five siblings, none of whom is named Jennifer.

---

[2]     The court's minute order states that "paternal aunt, Jennifer P." is to be assessed as a monitor for Father's visits.

Mother reported she had three siblings—Sydney R., Zachary R., and Josh R.—and had previously provided the Department with contact information for Sydney and Zachary (but not Josh) in March 2023. Mother and Josh were adopted; Sydney and Zachary were the birth children of Mary R. and Mark R. Mother told the Department "she was adopted at birth and was raised by her adoptive parents" and "she does not know her biological family."

Mother also stated she had a "wonderful relationship" with Sydney and Josh, and that all of her siblings loved O.M., especially Sydney. In June 2023, the Department twice communicated by telephone with maternal aunt Sydney, who lived with maternal grandmother Mary R.[3] The record does not reflect Sydney was asked about O.M.'s Indian ancestry. The Department made two unsuccessful attempts to contact Josh by telephone in April 2023 and June 2023.

In November 2023, the juvenile court released O.M. to Mother with the conditions that she submit negative drug tests and not live with Father.

In April 2024, the Department filed a section 387 supplemental petition alleging Mother failed to comply with her reunification plan due to continued substance abuse, including smoking fentanyl with Father, and failure to follow court orders to drug test and participate in treatment programs. O.M. was detained from Mother, with monitored visits, and not released to Father. The juvenile court found no reason to know or believe O.M. was an Indian child.

---

[3]   Sydney R.'s name is sometimes spelled "Sidney" in the record. We follow the spelling used in Mother's briefs.

On May 22, 2024 and December 19, 2024, maternal grandfather Mark and maternal uncle Zachary denied Indian ancestry.

In June 2024, the juvenile court sustained the supplemental petition, removed O.M. from Mother, and ordered monitored visits and reunification services. The juvenile court again found ICWA inapplicable.

In September 2024, at the review hearing, the juvenile court found progress by both parents was unsubstantial, terminated reunification services for both parents, and set a section 366.26 hearing.

On January 17, 2025, paternal grandfather Kevin M. and his wife, paternal step-grandmother Jill M., denied Indian ancestry.

On March 24, 2025, the juvenile court held the section 366.26 hearing. Mother objected to termination of her parental rights and argued the beneficial parental relationship exception to adoption was applicable. The court found O.M. adoptable, determined the beneficial parental relationship exception to adoption was inapplicable, terminated both parents' parental rights, and placed O.M. for adoption. The juvenile court determined ICWA was inapplicable.

Father and Mother each timely appealed.

## DISCUSSION

A.    *ICWA and the Duties of Inquiry and Notice*

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not

5

prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*In re Dezi C.*); see 25 U.S.C. §§ 1902, 1921; see also *In re T.R.* (2024) 107 Cal.App.5th 206, 218.) "[W]hen ICWA applies, 'the Indian child's tribe shall have a right to intervene at any point' in a proceeding involving the removal of an Indian child from their family." (*In re Dezi C.,* at p. 1129; see 25 U.S.C. § 1911(c).)[4] "To ensure tribes have the opportunity to exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes." (*In re T.R.,* at p. 218; see § 224.2, subd. (a).)

An inadequate ICWA inquiry in a dependency case does not involve "a conventional scenario in which the harm from error directly and solely affects the appealing party." (*In re Dezi C. supra,* 16 Cal.5th at p. 1138.) Rather, "an appealing parent 'is in effect acting as a surrogate for the tribe in raising compliance issues.' " (*Ibid.*) "ICWA and Cal-ICWA ' "recognize[ ] that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents" ' and other relatives." (*Ibid.*) "That interest is compromised and cannot be protected if

---

[4]     For purposes of ICWA, an "Indian child" is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (See 25 U.S.C. § 1903(4) [definition of " 'Indian child' "] & (8) [definition of " 'Indian tribe' "]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

6

the social service agency and the juvenile court fail to perform their inquiry duties." (*Ibid.*)

The duty to inquire " 'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.' " (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)-(c).) The juvenile court is required to "ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child." (§ 224.2, subd. (c).) The Department's duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2); see *In re T.R., supra,* 107 Cal.App.5th at pp. 218-219.)

ICWA and Cal-ICWA define " 'extended family member,' " if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).) "[A]lthough a child welfare agency need not interview extended family members whom it cannot locate after a good faith effort, it must seek to elicit information from extended family members who are ' "reasonably available to help the agency with its investigation" ' into whether a child has potential Indian ancestry." (*In re Claudia R.* (2025) 115 Cal.App.5th 76, 81 (*Claudia R.*); see *In re Dezi C., supra,* 16 Cal.5th at p. 1140.)

7

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e); see *In re T.R., supra,* 107 Cal.App.5th at p. 219.) That further inquiry requires interviewing, "as soon as practicable," extended family members; contacting the Bureau of Indian Affairs; and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e), (e)(2)(C); see *In re T.R.*, at p. 219.)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; accord, *In re T.R., supra,* 107 Cal.App.5th at p. 219; see 25 U.S.C. § 1912(a); § 224.3, subd. (a).) " 'The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families.' " (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317; accord, *In re Dezi C., supra,* 16 Cal.5th at pp. 1131-1132.)

"[E]rror resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a

8

proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*In re Dezi C., supra,* 16 Cal.5th at p. 1136; accord, *In re T.R. supra,* 107 Cal.App.5th at p. 220; see *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1094 (*In re Kenneth D.*) ["a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry"].)

But, "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*In re Dezi C., supra,* 16 Cal.5th at p. 1141.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)." (*In re Dezi C., supra,* 16 Cal.5th at p. 1134; see *Claudia R., supra,* 115 Cal.App.5th at p. 85 [" 'We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence' "].) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi. C.,* at p. 1141; see § 224.2, subd. (i)(2).)

" 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D., supra,* 16 Cal.5th at pp. 1101-1102.)

9

B.	*The Department Complied with Its Duty of Inquiry Under Section 224.2, Subdivision (b)*

As detailed above, the Department's reports confirm its social workers or investigators contacted and inquired about O.M.'s Indian ancestry by asking both parents, both maternal grandparents (who adopted Mother), both paternal grandparents, and a maternal uncle, all of whom denied Indian ancestry. The paternal step-grandmother also denied any knowledge of Indian ancestry in the paternal family.

Although the Department's ICWA inquiry covered the available branches of O.M.'s family tree, the parents contend we should conditionally reverse and remand for further ICWA inquiry because three of their siblings were not asked about O.M.'s Indian ancestry: (1) paternal aunt Jennifer, whom the juvenile court ordered the Department in May 2023 to assess as a monitor for Father's visits with O.M., at Father's request; (2) maternal uncle Josh, with whom Mother stated she had a "wonderful relationship"; and (3) maternal aunt Sydney, who lived with maternal grandmother Mary and was contacted by the Department by phone in June 2023.

Section 224.2, subdivision (b), however, does not mandate that every living extended family member be interviewed. (*In re Dezi C., supra,* 16 Cal.5th at p. 1140 [reversal is not required in "all cases in which every possible extended family member has not been asked about the child's Indian ancestry"].) What is required is that the Department interview known and "reasonably available" extended family members and make reasonable efforts to identify and thereafter to interview any other extended family members, as well as other individuals who have an interest in the child regarding the child's possible Indian

10

ancestry. (See *Claudia R., supra*, 115 Cal.App.5th at p. 88 [duty of inquiry not satisfied where Department failed to inquire of maternal grandfather, maternal aunt, and maternal uncle whose contact information was known to mother and who were in contact with her].)

Here, substantial evidence supports the juvenile court's finding that the Department discharged its duties under ICWA.[5]

As to paternal aunt Jennifer, the only reference to her in the record is at the jurisdiction and disposition hearing when Father's counsel requested, and the court ordered, that Jennifer be assessed as a potential monitor. The parents' supplemental briefs identify no other reference to Jennifer in the record. And, as stated, none of Father's five siblings is named Jennifer. The record also does not reflect that any contact information was ever provided for a "Jennifer." On the day his counsel asked the court to assess Jennifer as a monitor, Father submitted a "Relative Information Sheet" to the juvenile court that included contact information only for the paternal grandmother. There is no substantial evidence that Father has a paternal sibling named Jennifer who was reasonably available for an ICWA inquiry.

As to maternal uncle Josh, Mother argues that "on June 9, 2023, the Department unsuccessfully attempted to contact maternal uncle, Josh R., - but did not try to contact him again." The Department's telephone logs, however, reflect that the Department made two efforts to contact Josh, once in April 2023

_____

[5] We invited the parties to submit supplemental briefing regarding whether Father has a paternal relative named Jennifer, and whether Jennifer, Sydney, or Josh were reasonably available such that the Department had a duty to contact them to conduct an ICWA inquiry.

11

and again in June 2023.  The Department even made efforts to obtain Josh's name and contact information when Mother did not provide either to the Department when she gave contact information for Mary, Zach, and Sydney.  Under the circumstances presented, the court could reasonably conclude that Josh was not "reasonably available."  (See *In re C.L.* (2025) 116 Cal.App.5th 53, 69 (*In re C.L.*) [sufficient evidence supported juvenile court's determination that Department's inquiry was adequate despite failure to inquire of maternal uncle where the record did not "clearly demonstrate that the maternal uncle was 'reasonably available to help the agency with its investigation' "]; *In re Kenneth D., supra,* 16 Cal.5th at p. 1101 [" 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.' "].)

As to maternal aunt Sydney, the Department communicated with Sydney twice in June 2023, but the record does not reflect it inquired regarding O.M.'s Indian ancestry.  The Department subsequently made efforts to contact Sydney in May 2024 for its updated June 2024 report to the court, but the Department was told by Zachary and Mary that Sydney was unavailable because she was out of the country for the next month.  Mary also stated that although Sydney had been living with her in Florida, she was moving out in August 2024.  And, although Mother had stated she was close with Sydney, Mary reported that Mother had recently "blocked" Sydney on her telephone.  Under these circumstances, it is not clear Sydney was reasonably available.  But even assuming she was, the juvenile court could reasonably conclude it had sufficient, reliable information before it from Mother, both maternal grandparents,

12

and another of Mother's siblings indicating the maternal family had no Indian ancestry, and there was no indication Sydney would have any additional information.[6] (See *In re C.L., supra*, 116 Cal.App.5th at p. 70 [substantial evidence supported court's determination Department's ICWA investigation was adequate because "[t]he court could reasonably consider the responses of mother, the maternal grandmother, and the maternal great uncle, as well as the absence of any indication the maternal uncle would have more information than his own mother (the maternal grandmother) as to whether the children are or may be Indian children"]; *In re Kenneth D., supra,* 16 Cal.5th at p. 1101.)

## DISPOSITION

The orders terminating parental rights are affirmed.

MARTINEZ, P. J.

I concur:

STONE, J.

---

[6] The dissent thoughtfully and correctly notes the Department could have done more to reach maternal siblings Josh and Sydney. But in light of the well-developed record before the juvenile court, substantial evidence supports its determination ICWA did not apply here. (*In re Dezi C., supra,* 16 Cal.5th at p. 1134; *In re Kenneth D., supra,* 16 Cal.5th at p. 1101.)

FEUER, J., Dissenting

I agree with the majority's thorough analysis of the obligations of the juvenile court and the Los Angeles County Department of Children and Family Services (Department) under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and the California Indian Child Welfare Act (Welf. & Inst. Code, § 224 et seq.).[1]  Specifically, as the majority explains, a child welfare agency must seek to elicit information from extended family members who are reasonably available to assist the agency with its investigation into a child's Indian ancestry, but it "'need not interview extended family members whom it cannot locate after a good faith effort.'"  (Maj. opn., ante, at p. 8, quoting *In re Claudia R.* (2025) 115 Cal.App.5th 76, 81 (*Claudia R.*); see *In re Dezi C.* (2024) 16 Cal.5th 1112, 1140 (*Dezi C.*).)  However, I disagree with the majority's conclusion that the Department "discharged its duties under ICWA" (maj. opn., ante, at p. 11) by making sufficient, good faith efforts to contact Mother's siblings Sydney and Josh.  Sydney and Josh were reasonably available (especially close family member Sydney), yet no effort was made during the 18-month period in which O.M. was removed from Mother to contact either of them to inquire about the family's Indian ancestry.[2]  Substantial evidence therefore does not support the juvenile court's determination that the inquiry was adequate and that ICWA did not apply.

---

[1]  Further statutory references are to the Welfare and Institutions Code.

[2]  O.M. was returned to Mother on November 8, 2023 and remained with her until he was again removed on April 30, 2024.

The Department was generally diligent with respect to its inquiry, interviewing the parents, the four grandparents, maternal uncle Zachary, and the paternal step-grandmother, all of whom denied Indian ancestry. For the final status report before the March 24, 2025 hearing under section 366.26, the social worker provided a helpful chart for the juvenile court that outlined the individuals who were contacted, the dates and method of contact (including telephone numbers), and information provided by the contacts. Notably, however, Sydney and Josh are not included in the chart, even to identify them as extended family members who had not been contacted.

In March 2023 Mother told the social worker she had three siblings and provided the social worker with Sydney's telephone number (and later with Josh's telephone number). At the time, Sydney was living with maternal grandmother Mary R. and the maternal grandfather in Florida. The social worker interviewed Mary as to the family's Indian ancestry on April 11, 2023, May 22, 2024, and December 19, 2024 (and the maternal grandfather on the May and December dates), but not Sydney or Josh. The only contact with Sydney reflected in the record is that the social worker contacted her twice in June 2023, once as a "consult" with a collateral contact as part of the initial investigation, and a second time regarding available services for O.M. The social worker attempted to call Josh two times (in April and June 2023), also to consult as a collateral contact, but the only other information in the record about this call is that the social worker "attempted" to reach him. The record does not show that the social worker left a message or a number where she could be contacted.

It appears from this record that the social worker's failure to inquire of Mother's two siblings may have been an oversight, especially given that the social worker interviewed non-extended family members, including the step-grandmother, Mother's roommate, and the roommate's best friend. It is true that "section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*Dezi C., supra*, 16 Cal.5th at p. 1140; see *Claudia R., supra*, 115 Cal.App.5th at p. 87 ["in cases where [the Department] makes a good faith effort to locate an extended family member but is not successful, section 224.2 does not require the Department to take additional steps to locate the family member if there are other reasonably available family members who can provide sufficient information on the children's potential Indian ancestry"].) But Sydney and Josh were far from unknown.

Nor did the Department make a good faith inquiry. With respect to Sydney, the majority relies on the Department's two conversations with Sydney in June 2023 for its underlying investigation and that in May 2024 the Department learned Sydney was out of the country for a month (into June), Sydney was moving out of the family home in August 2024, and Mother had recently "blocked" Sydney from calling her on her telephone. (Maj. opn., ante, at p. 13.) However, the May 22, 2024 conversation with the maternal grandparents and Zachary was not about ICWA; rather, the dependency investigator interviewed the family about their concern that they had lost contact with Mother in the prior week and that Mother had potentially relapsed. In that conversation Mary stated Sydney had been living with the family and talked to Mother every day but Sydney

3

had not heard from Mother for a week. Zachary confirmed "their whole family has been worried and trying to contact [M]other," noting Mother spoke most frequently with Sydney. Mary and Zachary told the dependency investigator that she might not be able to reach Sydney for the next month because Sydney was out of the country and would "be unavailable for the next month." Neither the dependency investigator nor the social worker attempted to contact Sydney following Sydney's return in late June or during the nine months leading up to the section 366.26 hearing. It is not clear why, as the majority concludes, the fact Mother blocked Sydney from calling her, or that Sydney planned to move out of the family home, would have prevented the social worker from contacting Sydney by phone (at the number on which they previously spoke) or from contacting Sydney through the maternal grandparents or Zachary.

The Department likewise never attempted to contact Josh after the April and June 2023 attempts to reach him during the initial investigation (almost two years before the section 366.26 hearing). The record does not reflect that the social worker left a message for Josh, nor did the social worker ask Mother (who had a "wonderful" relationship with Josh and the siblings) to confirm his contact information or help the social worker to contact him. The fact the social worker did not include Josh in her ICWA status reports throughout the case underscores that no effort was made to contact him for this purpose.

Notwithstanding the Department's lack of good faith efforts to contact Sydney or Josh (acknowledging "the Department could have done more"), the majority concludes the juvenile court satisfied its obligations under ICWA because the court could have reasonably concluded that it had sufficient information from the

4

grandparents and Zachary, and that Sydney (and presumably Josh) would not have provided additional information. (Maj. opn., *ante*, at pp. 13-14 & fn. 6.) It is true that the Department was able to interview all four grandparents, who would be in the best position to recount the family's Indian ancestry. But that does not mean the Department could ignore its obligation to contact reasonably available extended family members who might have information relevant to O.M.'s ancestry. On this record, substantial evidence does not support the juvenile court's finding the Department made a sufficient, good faith effort to contact Sydney and Josh during the 18 months in which O.M. was removed from Mother. (See *Claudia R., supra*, 115 Cal.App.5th at p. 85 ["'We review the juvenile court's factual finding that ICWA does not apply for substantial evidence.'"]; *In re C.R.* (2025) 112 Cal.App.5th 793, 800 [same].)[3]

---

[3]    *In re C.L.* (2025) 116 Cal.App.5th 53, 70, relied on by the majority (maj. opn., *ante*, at pp. 13-14), is distinguishable. In that case the Court of Appeal concluded substantial evidence supported the juvenile court's determination that the Department's inquiry was adequate and ICWA did not apply, notwithstanding the agency's failure to inquire of the maternal uncle whether the children may be Indian children. (*Id*. at p. 69.) Unlike this case, the social worker made multiple attempts to contact the maternal uncle, who was visiting the family from Texas and had gotten in a physical altercation with the father that led to detention of the children. The social worker called the uncle on his cell phone (but he did not answer); she could not leave a message because his voicemail was not set up; she sent a text message to the uncle (with no response); the social worker learned the uncle was in an inpatient rehabilitation program and attempted unsuccessfully to locate the program; and she learned

5

Moreover, a determination that the juvenile court complied with its ICWA obligations because the court had sufficient reliable information and would not have learned anything new from Sydney (or Josh) is, in my view, another way of saying the error in failing to conduct an adequate ICWA was harmless. As the majority acknowledges, the Supreme Court in *Dezi C., supra,* 16 Cal.5th at page 1136 clarified that "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry [and notice provisions]." Further, "'until an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'" (*Ibid.*)

I recognize the importance of providing O.M. the permanence and stability that every child needs. Had the Department made some effort to contact Sydney and Josh prior to the section 366.26 hearing a year ago, O.M. could be on his way to adoption (unless the new information revealed he may have Indian ancestry). And it may be that the failure to do so was an oversight. Nonetheless, in light of the essential right of Indian tribes to determine whether a child is an Indian child and to intervene in removal proceedings when ICWA applies, I would conditionally reverse and require the Department to remedy that oversight now.

---

the uncle was not allowed to receive calls on his cell phone while in the program. (*Id.* at pp. 59-60, 69.) In addition, it was undisputed that the social workers had contacted all other reasonably available extended family members. (*Id.* at pp. 69-70.)

I therefore respectfully dissent.


FEUER, J.